# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

CRAIG WHITE,

    *Plaintiff,*

v.

OFFICER TRAVIS CLAY DEPEW;
CHIEF OF POLICE FRED ALLEN;
JACKSON POLICE DEPARTMENT,
LOUISIANA; TOWN OF JACKSON,
LOUISIANA

    *Defendants.*

Civil Action No. 3:21-cv-00451

Judge:

Magistrate Judge:

JURY TRIAL DEMANDED

## COMPLAINT

1.    Plaintiff Craig White files this Complaint pursuant to 42 U.S.C. § 1983. He seeks to recover for violations of his rights under the United States Constitution and pursuant to Louisiana state law. This lawsuit is brought to recover for an unconstitutional stop, search, seizure, assault, false arrest, and use of excessive force, among other counts. Defendant Officer Travis Clay Depew instigated these actions against Plaintiff Craig White under the color of state law and without just cause. In support hereof, Plaintiff White states as follows:

## INTRODUCTION

2.    This case represents another disturbing occurrence in a string of troubling incidents where Black men in the United States are subject to

unconstitutional stops, unlawful searches, and excessive force at the hands of law enforcement.  In this case, as in others, in order to prevent the focus of the incident from revolving around officer misconduct, the officer fabricates criminal charges that spuriously claim the Black man at issue resisted arrest and battered the officer.

3.     Plaintiff White is one of too many Black people to endure excessive force at the hands of law enforcement, only to face criminal charges stemming from that very same incident.  Law enforcement officers commonly use "cover charges," such as resisting arrest, to justify their use of unreasonable and excessive force against people of color.[1]  As a result, Black people like Plaintiff White not only suffer from the physical and psychological trauma of police violence, but they must also confront a criminal legal system that views them not as victims, but as criminals—resulting in long-lasting barriers to employment, housing, and education.

4.     On the night of August 6, 2020, Plaintiff White was driving lawfully and minding his own business in Jackson, Louisiana.  He believes that Defendant Depew stopped him that night because Defendant Depew had a problem with

---

[1] *See, e.g.*, Lisa Cacho & Jodi Melamed, *How Police Abuse the Charge of Resisting Arrest*, Boston Review, June 29, 2020, http://bostonreview.net/race-law-justice/lisa-cacho-jodi-melamed-how-police-abuse-charge-resisting-arrest (last visited August 5, 2021); Scott Holmes, *Resisting Arrest and Racism – The Crime of "Disrespect"*, 85 UMKC L. Rev. 625 (2017); Jonah Newman, *Chicago police use 'cover charges' to justify excessive force*, Chicago Reporter, Oct. 23, 2018, https://www.chicagoreporter.com/chicago-police-use-cover-charges-to-justify-excessive-force/ (last visited August 5, 2021).

Plaintiff White being a Black man in a committed relationship with a White woman. As detailed below, Defendant Depew quickly escalated the incident by violently tackling Plaintiff White to the ground for no reason, slamming his head into the pavement and leaving Plaintiff White with lasting injuries.

5.     This incident never should have happened because the Town of Jackson and the Jackson Police Department should never have hired Defendant Depew.  As described below, he had been fired from a previous law enforcement job after being charged with the crimes of stalking and malfeasance in office.  Although these charges were later expunged, they nevertheless drive home the allegation that Defendant Depew has a pattern of aggressive and unlawful behavior.

6.     Defendant Depew's troubling history was publicly accessible, and yet, on information and belief, the Town of Jackson and the Jackson Police Department ("the Department") hired Defendant Depew without conducting a background check or in spite of his criminal history.  The Town of Jackson and the Department thus failed to ensure that Defendant Depew was capable of faithfully serving in his role as a police officer and of fulfilling his duty to serve and protect all people with whom he came into contact.

7.     Moreover, Defendant Depew continued his misconduct while on the force of the Jackson Police Department:

- On or around October 12, 2020, Defendant Depew reportedly beat a Black man in the face with a flashlight, causing blowout facial fractures.

- On November 4, 2020, Defendant Depew pulled over a woman for a traffic infraction and a few minutes later, tackled her violently to the ground, causing injuries.

- On February 5, 2021, Defendant Depew allegedly choked a black teenager in a parking lot and called him the N-word, a racial slur. Defendant Depew was arrested for choking the teenager in May 2021 and charged with simple battery and malfeasance while in office.

8.    In short, Defendant Depew has been involved in various acts of violence, including violent takedowns that suspiciously charge the victims with resisting arrest—just like the incident described in this Complaint.

## **PARTIES**

9.    Plaintiff Craig White is a resident of Jackson, Louisiana, within the Middle District of Louisiana.  He resides at 3300 Franklin Street in Jackson, Louisiana.  He is an African-American man and is in a long-term relationship with a White woman, whom he considers his common-law wife.

10.    Plaintiff White is a citizen of the United States of America.

11.    Defendant Officer Travis Clay Depew is a Police Officer for the Jackson Police Department in Louisiana.  Defendant Depew is a White man.  He is sued in his individual capacity.

12.    Defendant Depew is a person for purposes of 42 U.S.C. § 1983. Defendant Depew was, at all relevant times, acting under the color of state law in his capacity as an Officer for the Jackson Police Department and his acts or omissions were conducted within the scope of his official duties or employment.

13.    Defendant Fred Allen, upon information and belief, is a resident of Jackson, Louisiana, within the Middle District of Louisiana.  Defendant Allen is the Police Chief of the Jackson Police Department, and the Marshal of Jackson Marshal's Office.  He has responsibility for the overall leadership of the Police Department, including hiring, training, supervising, disciplining, and firing officers. He is sued in his official capacity.

14.    On information and belief, Defendant Jackson Police Department is the primary law enforcement agency for Jackson, Louisiana and is an agency of the town government.  The Jackson Police Department is also responsible for preventive, investigative and enforcement services, as well as for ensuring the safety of all citizens of Jackson, Louisiana.

15.    Defendant Town of Jackson, Louisiana is a municipality in East Feliciana Parish, and has been duly incorporated.  Defendant Town of Jackson is a municipality for purposes of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

16.    Plaintiff White seeks redress for the deprivation of his rights secured by the United States Constitution.  This action is instituted pursuant to 42 U.S.C. § 1983 and seeks relief for Defendants' violations of Plaintiff White's constitutional rights. Therefore, this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This Court also has jurisdiction over Plaintiff White's state law claims pursuant to 28 U.S.C. § 1367(a).

17.    This Court has personal jurisdiction over Defendants because Defendants are domiciled in Jackson, Louisiana, and the infringement of Plaintiff White's rights guaranteed by the United States Constitution and Louisiana state law occurred within Jackson, Louisiana.

18.    Venue appropriately lies in this judicial district under 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to Plaintiff White's claims occurred within this judicial district.

19.    Declaratory relief is authorized by 28 U.S.C. § 2201.  A declaration of law is necessary to determine the rights and duties of the parties.

## FACTUAL ALLEGATIONS

**A.    Defendant Depew Has an Ongoing History of Misconduct.**

20.    Information in the public domain suggests that Defendant Depew has a pattern and practice of misusing state power and of violating citizens' rights, particularly those of African-American citizens.

21.    Publicly available reports indicate that Defendant Depew has a history of unlawful conduct that both preceded and accompanied his time as a law enforcement officer with the Jackson Police Department.  The past incidents involving Defendant Depew include, but are potentially not limited to, the following.

- In or around 2017, according to published reports, Defendant Depew, while employed by a different police department—this time, the Pointe Coupee Parish Sheriff's Office—was terminated after being arrested for stalking and malfeasance in office on August 11, 2017.  Those arrest records were eventually expunged, although it is not known how or why Defendant Depew was able to expunge these records.  In any event, the expungement occurred well after he was hired by the Jackson Police Department—the law enforcement agency at issue in this case—and after Defendant Depew's unlawful arrest of Plaintiff White.[2]

---

[2] *See* Scottie Hunter, *Jackson deputy marshal accused of choking teen arrested, fired from previous law enforcement agency*, WAFB9, April 6, 2021,

22.    Because these documented instances of misconduct were readily available in the public domain, they required investigation by the Town of Jackson and the Jackson Police Department.  On information and belief, this investigation never occurred, resulting in the negligent hiring of Defendant Depew.

23.    Defendant Depew's unlawful stop, search, and assault of Plaintiff White falls into a pattern of conduct he employed as an Officer with the Jackson Police Department.  On information and belief, after being hired by the Department, he quickly became known around town as a police officer who routinely harassed civilians, particularly African-Americans.[3]

24.    The Town of Jackson, the Department and Police Chief Allen knew or should have known about these events and, on information and belief, deliberately turned a blind eye to them and potentially other officers with a similarly troubling history of misconduct.  In doing so, the Town of Jackson, the Department and Allen ratified a *de facto* policy or custom condoning at a minimum, the unlawful conduct

---

https://www.wafb.com/2021/04/07/investigators-jackson-deputy-marshal-accused-choking-teen-arrested-fired-previous-law-enforcement-agency/ (last visited August 5, 2021).

[3] *See* WBRZ Staff, *Police officer on leave over claims he choked teen, used slur,* WBRZ, March 25, 2021, https://www.wbrz.com/news/jackson-police-officer-placed-on-leave-over-claims-he-choked-teen-used-slur/?fbclid=IwAR2ILV_XlMD1Xe-b7SatzFmI6icbs3qccnWjIh0y634OkrJNYAJ3LihJHYo (last visited August 5, 2021)

of Defendant Depew and, as a maximum, the unlawful conduct of multiple officers. The Town of Jackson, the Department, and Allen are therefore liable for Defendant Depew's assault of Plaintiff White.  Had the Town of Jackson, the Department and Allen properly supervised Defendant Depew, the incident on August 6, 2020, with Plaintiff White would never have happened.

25.    Instead, on August 6, 2020, Defendant Depew, while employed by the Department, assaulted Plaintiff White—a Black man who was being nothing but compliant during a traffic stop.  After stepping out of the vehicle at Defendant Depew's request, Defendant Depew tackled Plaintiff White hard into the ground without warning, slamming Plaintiff White's head and shoulder into the asphalt, causing his head to bleed. Plaintiff White lost consciousness and woke up in the back of an ambulance at the scene of the incident.  Although Defendant Depew was equipped with a body-worn camera, contrary to department policy, he chose not to turn it on during this encounter.

26.    Disturbingly, but not surprisingly, Defendant Depew's misconduct continued after he assaulted Plaintiff White.

27.    Approximately two months later, on or around October 12, 2020, Defendant Depew, while employed by the Jackson Police Department, reportedly beat a Black man in the face with a flashlight, causing blowout facial fractures— specifically, a right depressed orbital floor fracture and right zygomaticomaxillary

complex ("tripod") fracture. News reports indicate that this man was named Tyquan Vessell, and, like Plaintiff White, he was also accused of battery on a police officer and resisting arrest.[4]

28.    Less than one month later, on November 4, 2020, Defendant Depew arrested a White woman, Chasity Harveston, whom he claimed was driving erratically. As with Plaintiff White, Defendant Depew asked her to exit her vehicle, and then he tackled her violently to the ground, causing injuries. As with Plaintiff White, Defendant Depew charged Ms. Harveston with resisting arrest.

29.    On or about February 9, 2021, Defendant Depew's charges of stalking and malfeasance in office, which led to his termination from the West Feliciana Sheriff's Office, were, for reasons currently unknown, expunged. Nonetheless, records of these charges should have been visible to the Jackson Police Department at the time Defendant Depew was hired in 2020.

30.    About two weeks after these charges were expunged, Defendant Depew, while employed by the Jackson Police Department, allegedly choked a 16-year-old Black teenager. He did so outside the Main Street Market Gas Station, all while calling the teenager the N-word. Despite being equipped with a body-worn

---

[4] *See* Staff Report, *East Feliciana Parish Prison Bookings,* The Advocate, December 15, 2020, https://www.theadvocate.com/baton_rouge/news/communities/east_feliciana/article_52425eb0-38d7-11eb-b0fd-3bfcfbefa7e8.html (last visited August 5, 2021)

camera, again, Defendant Depew chose to not turn it on during the encounter, contrary to department policy.  The incident only ended after another officer intervened and pulled Defendant Depew off the teenager.  Months later, on May 5, 2021, Defendant Depew turned himself in to the East Feliciana Parish Jail on two charges: simple battery and malfeasance in office.[5]  Those charges remain pending. On information and belief, after turning himself in, Defendant Depew was placed on leave by the Jackson Police Department and currently remains on leave.

**B.    Defendant Depew Wrongly Stopped Plaintiff White.**

31.    On August 6, 2020, Plaintiff White was driving alone in his Honda Accord on Charter Street in Jackson, Louisiana.  Sometime after 8 P.M., he was pulled over by Defendant Depew.  Officer Jorge Rice was also at the scene.

32.    Plaintiff White was not using his phone while driving.  He was also not holding his phone at any time while driving or after he was pulled over by Defendant Depew.

33.    Plaintiff White was driving normally.  He was not breaking any traffic laws, nor was he swerving.

---

[5] *See* Scottie Hunter, *Deputy marshal accused of choking teen at gas station arrested*, WAFB9, May 5, 2021, https://www.wafb.com/2021/05/05/investigators-deputy-accused-choking-teen-gas-station-arrested/ (last visited August 5, 2021)

34.    Defendant Depew had no probable cause or lawful reason to stop Plaintiff White.

35.    When Plaintiff White noticed that he had been signaled to stop by law enforcement, he pulled his car over in front of Jackson Town Hall, a reasonable distance away from the flow of traffic.

36.    On information and belief, contrary to Department policy, Defendant Depew deliberately chose to not activate his body-worn camera at the beginning of the encounter.  He would later accuse Plaintiff White of deliberately damaging the body-worn camera—a false charge.

37.    Upon pulling over his vehicle, Plaintiff White was told by Defendant Depew that Defendant Depew had stopped him because Plaintiff White was using his phone while driving.  This claim was false.

38.    On information and belief, Defendant Depew manufactured this excuse in order to conduct the stop.  In reality, Defendant Depew stopped Plaintiff White not because he had been using his phone, but because he is Black.  At bottom, Defendant Depew racially profiled Plaintiff White with the intent of harassing him.

39.    As Plaintiff White would later find out during the course of the investigation that preceded this litigation, it is Defendant Depew's common practice to use false pretexts to unlawfully stop and search vehicles and their occupants.

40.    After approaching the vehicle, Defendant Depew asked Plaintiff White for his driver's license and car registration information.  Plaintiff White had not met Defendant Depew before, as this was their first encounter.

41.    Intending to fully cooperate with this request and knowing he had done nothing wrong, Plaintiff White willfully and voluntarily provided his license and registration information.

42.    Despite not having probable cause to even effectuate a stop of Plaintiff White's vehicle, Defendant Depew asked Plaintiff White to exit his vehicle.  Plaintiff White complied.

43.    At this point, Plaintiff White recalls Defendant Depew asking him, "What is your old lady up to these days?"—presumably referring to Plaintiff White's common-law wife, who is a White woman.  Plaintiff White was surprised by this statement, as he did not know that Defendant Depew knew his wife.  Plaintiff White recalls responding with words to the effect of: "I don't know, she's at home, I guess."

**C.    Defendant Depew Unlawfully Attempts to Search Plaintiff White.**

44.    While standing outside of his vehicle, Plaintiff White did not pose a danger to either Defendant Depew or Officer Rice.  At no time while he was standing outside of his vehicle did Plaintiff White reach for any of his pockets.  At no time did Plaintiff White make any threatening movements in any way to put Defendant Depew or Officer Rice in reasonable fear for their safety.  Plaintiff White's hands

and waistline were at all times visible to Defendant Depew and Officer Rice. Plaintiff White did not have any weapons, let alone any object that could be used to harm either officer.

45.    According to the "Probable Cause Affidavit," which Defendant Depew authored (the "Depew Affidavit"), Defendant Depew asked Plaintiff White if there was anything illegal in the vehicle, to which Plaintiff White responded that there was not.    According to Defendant Depew, Plaintiff White gave Defendant Depew permission to search his vehicle.

46.    However, Plaintiff White did not give Defendant Depew or Officer Rice consent to search his vehicle.    Plaintiff White also did not give Defendant Depew permission to search Plaintiff White's person.

47.    According to the Depew Affidavit, Defendant Depew asked Plaintiff White if there was anything illegal in his pockets.    Plaintiff White denied the accusation.

48.    Despite this response, according to the Depew Affidavit, Defendant Depew approached Plaintiff White to perform a safety pat down.    This, however, was an unlawful action.    Indeed, it was clearly established at the time of this encounter that a police officer needs to be able to articulate specific facts that lead him to have a reasonable suspicion that the person is armed or poses an immediate threat to safety—upon which a limited pat-down of the outer surface of the person's

clothing is permissible.  Here, there was no reasonable suspicion that Plaintiff White was armed.  A *Terry v. Ohio*, 392 U.S. 1 (1996) pat down was thus not permissible.

49.    The Depew Affidavit falsely states that Defendant Depew did nothing more than attempt to perform a pat down of Plaintiff White.  This is not what happened.

50.    Rather, Defendant Depew lunged his hand at Plaintiff White's front pocket, presumably trying to effectuate a search despite having no reasonable suspicion or probable cause to do so.  Defendant Depew started to aggressively touch Plaintiff White without reasonable suspicion and in the absence of consent.

51.    When Defendant Depew lunged at Plaintiff White, the latter pulled back reflexively.  Plaintiff White objected to the assault and said "no," batting away Defendant Depew's hand.

52.    The Depew Affidavit had no reason to believe that Plaintiff White had any weapons or contraband in any of his pockets.

53.    The Depew Affidavit falsely states that Defendant Depew observed Plaintiff White holding a plastic bag that contained other plastic bags.  But Plaintiff White was not holding any bag whatsoever when he was stopped.  Plaintiff White also denies that he had any small or little plastic bags on his person or in his car, or that Defendant Depew asked him about any bag(s) during the incident.

54.     Further, Defendant Depew's search of Plaintiff White's person was not a search incident to arrest, because it is undisputed that Defendant Depew attempted to search Plaintiff White's person *before* placing him under arrest.

55.     Therefore, Defendant Depew's actions in attempting to search Plaintiff White without a warrant violated Plaintiff White's rights under the Fourth Amendment.

56.     Additionally, even a lawful *Terry* pat down, which this incident was not, does not include the ability to reach into someone's pocket unless the officer can ascertain from a pat-down that the object is a weapon.  Here, Plaintiff White did not have any weapons or contraband in his pocket, and therefore reaching into his pockets was not permissible.  Defendant Depew himself acknowledges that his search was an improper *Terry* pat down as he was "reaching for" Plaintiff White's pocket, not patting down the outside of the pocket.

57.     In response to Defendant Depew's unlawful touching, Plaintiff White did not assault, batter, or push Defendant Depew.  Contrary to the Depew Affidavit, Plaintiff White did not put his arm around Defendant Depew's neck or otherwise touch his body-worn camera, belt, uniform, or body.  Plaintiff White made no actions that could reasonably be construed as an act of aggression towards Defendant Depew.

58.     Plaintiff White also did not push Officer Rice or perform any action that could reasonably be construed as an act of aggression towards Officer Rice.

59.     During this encounter, Plaintiff White was not armed, and he did not possess any contraband, either on his person or in his vehicle.

**C.    Defendant Depew Violently Assaults Plaintiff White.**

60.     Despite having no reasonable suspicion or probable cause to arrest Plaintiff White—and despite the fact that no reasonable police officer in Defendant Depew's position would have believed that arresting Plaintiff White was reasonable— Defendant Depew, without warning and in the blink of an eye, tackled Plaintiff White hard into the ground.  In doing so, he slammed Plaintiff White's head and shoulder into the asphalt and caused Plaintiff White's head to bleed.

61.     As a result of this violent and unjustified action by Defendant Depew, Plaintiff White lost consciousness.

62.     When he woke up, he was in the back of an ambulance and a bandage had been applied to his head.  Plaintiff White immediately knew that he had suffered significant injuries; however, he was quite disoriented, and, as he was in fear of Defendant Depew, he wanted to terminate the entire encounter as soon as possible. As such, in an attempt to distance himself as quickly as possible from the man who had exacted such brutality upon him and fearing that the ambulance attendants might

harm him further at Defendant Depew's order, he declined on-scene medical treatment.

**D.    Defendant Depew Unlawfully Arrests and Detains Plaintiff White.**

63.    While Plaintiff White was unconscious, Defendant Depew placed Plaintiff White under arrest and handcuffed him, despite having no probable cause to do so.  Plaintiff White would later learn that Defendant Depew subsequently claimed that he had recovered narcotics from Plaintiff White after handcuffing him. This statement, yet again, was false, as Plaintiff White had no such narcotics to recover.

64.    In a warrantless arrest scenario, under La. Code Crim. Pro. art. 218, Defendant Depew was required to inform Plaintiff White of the cause of his arrest prior to placing him in custody.  However, neither Defendant Depew nor Officer Rice fulfilled this requirement.  Plaintiff White was not informed of his charges until several days later, when a judge recited his charges upon his release.

65.    At the time of the incident, Plaintiff White was in possession of legitimate funds that he earned as a car mechanic, approximately $1000, which was in the center console of his vehicle.  Those funds were wrongfully confiscated by Defendant Depew at the scene as part of the illegal arrest.

66.    After arresting him, Defendant Depew did not read Plaintiff White his Miranda rights.  In fact, neither Defendant Depew nor Officer Rice told Plaintiff

White that he was under arrest.  Indeed, Plaintiff White did not realize he had been under arrest until a judge recited his charges upon his release.

67.    Defendant Depew then drove Plaintiff White to Lane Hospital. However, not wanting anything further to do with Defendant Depew and still being quite disoriented, Plaintiff White once again refused treatment.

### E.    Defendant Depew Takes Plaintiff White to Jail.

68.    After turning away from the hospital, Defendant Depew took Plaintiff White to the East Feliciana Parish Jail for booking.  Despite still not reading Plaintiff White his Miranda rights, Defendant Depew handcuffed Plaintiff White to a bench and began to interrogate him about the source of the funds retrieved from the vehicle. Plaintiff White declined to answer these questions.

69.    Plaintiff White remained handcuffed to a bench until 1 or 2 A.M. the following day.  Defendant Depew never advised Plaintiff White of the offenses with which he was being charged.

70.    Plaintiff White remained in jail from Thursday night until Monday morning, when a judge released him on bail.

71.    At his judicial appearance on Monday, August 10, 2020, Plaintiff White learned for first time what outstanding criminal charges had been lodged against him: (1) Text Messaging While Driving; (2) Resisting An Officer, (3) Possession of Controlled Dangerous Substance, Schedule II; (4) Simple Criminal Damage to

Property; and (5) Battery.  Each of these charges is baseless and is designed to cover up Defendant Depew's misconduct.  However, despite Defendant Depew's record and his current status on leave for misconduct, these charges remain pending against Plaintiff White.

72.    After being released, Plaintiff White took himself to Our Lady of the Lakes Hospital, where he received treatment for significant head and shoulder injuries.  These injuries prevented Plaintiff White from working his normal job as a car mechanic for approximately six months due to reduced range of motion and the pain he experienced in his shoulder and when moving his right arm.

73.    To this day, Plaintiff White continues to suffer the after-effects of the vicious attack Defendant Depew exacted upon him, including lasting physical injuries, recurring headaches, problems with his vision, and reduced range of motion in his right arm. In addition, he has been deeply traumatized from this incident and has suffered from anxiety, depression, and loss of sleep.

74.    Specifically, Mr. White felt frightened, humiliated, and embarrassed during and after the incident.  He has suffered severe mental anguish from the arrest, due to being slammed to the ground, taken to jail in the middle of a pandemic, and being handcuffed to a bench.  Moreover, he is being emotionally burdened with a criminal prosecution for alleged wrongdoing he did not commit.

**F.    Defendant Depew Misrepresents the Incident and the Jackson Police Department Ratifies Defendant Depew's Fabricated Allegations.**

75.    Following the incident, Defendant Depew wholly misrepresented the circumstances of this incident in the Depew Affidavit and, by virtue thereof, to other officers, the District Attorney, and the Court.

76.    The official documents authored by Defendant Depew were replete with intentional false statements, including, but not limited to, the following:

- Plaintiff White used his phone while driving;

- Plaintiff White drove erratically;

- Plaintiff White was in possession of small plastic bags containing drugs;

- Plaintiff White put his arms around Defendant Depew's neck; and

- Plaintiff White touched or broke Defendant Depew's body-worn camera.

77.    Based on Defendant Depew's history, the Jackson Police Department knew or should have known that these statements were false and that the charges against Plaintiff White were false.  However, the Department ratified these charges, acting with deliberate indifference to Plaintiff White's constitutional rights.

**G.    The Town of Jackson and the Jackson Police Department Never Should Have Hired Defendant Depew.**

78.    The Town of Jackson and the Jackson Police Department owe a duty of care to the public prior to hiring a police officer and arming him with a gun.  Among

other responsibilities, this includes the duty to perform a background check prior to making a new hire.

79.    Information in the public record indicates that Defendant Depew was fired from his previous law enforcement position at the Pointe Coupee Sheriff's Office after being arrested for stalking and malfeasance while in office.  This conduct, which would have been discovered during any reasonable background check, should have disqualified Defendant Depew from further employment as a police officer with the Town of Jackson and the Jackson Police Department.

80.    Nonetheless, on information and belief, the Town of Jackson and the Jackson Police Department failed to employ an appropriate background check process.

## H.    The Jackson Police Department Knew or Should Have Known of Defendant Depew's Unlawful Behavior

81.    Making matters worse, after negligently hiring Defendant Depew, the Town of Jackson and the Jackson Police Department failed to appropriately supervise him.

82.    The Town of Jackson and the Department knew or should have known about Defendant Depew's pattern of unlawful behavior, described above, before he was placed on leave.

83.    Additionally, as also described above, the Town of Jackson and the Department knew or should have known about the pattern of misconduct Defendant Depew engaged in while on its force.

**COUNT I**
**42 U.S.C. § 1983 CLAIM**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**UNREASONABLE STOP AND SEIZURE**
**AGAINST DEFENDANT DEPEW**

84.    Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

85.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.  This constitutional right has been interpreted by the United States Supreme Court to also protect drivers from unlawful stops of their vehicle while driving.

86.    The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

87.    It was clearly established at the time Defendant Depew pulled Plaintiff White over that the Fourth and Fourteenth Amendments prohibit fabricating the rationale for a pretextual stop and thereby seizing a person without just cause.

88.    Defendant Depew did not witness Plaintiff White break any traffic law, nor did Defendant Depew have any reason to believe that Plaintiff White had broken any law.

89.    Any reasonable police officer would have known that stopping Plaintiff White under these circumstances was objectively unreasonable and would violate his clearly established constitutional rights.

90.    As a direct and proximate result of this unlawful stop and seizure, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

91.    Plaintiff White is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

92.    Plaintiff White is also entitled to punitive damages against Defendant Depew under 42 U.S.C. § 1983 because Defendant Depew's actions were malicious, willful, or, at a minimum, committed with reckless or wanton disregard for Plaintiff White's constitutional rights.

**COUNT II**
**42 U.S.C. § 1983 CLAIM**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**UNLAWFUL SEARCH**
**AGAINST DEFENDANT DEPEW**

93.    Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

94.    The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable searches by law enforcement officers.

95.    The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

96.    It was clearly established at the time Defendant Depew pulled Plaintiff White over that the Fourth and Fourteenth Amendments prohibit conducting a warrantless search of a person without reasonable suspicion or probable cause.

97.    Defendant Depew attempted to search Plaintiff White's pocket without reasonable suspicion or probable cause. The lack of reasonable suspicion or probable cause to search Plaintiff White would have been evident to any reasonable law enforcement officer based on the facts and circumstances within Defendant Depew's knowledge at the time.

98.    Any reasonable police officer would thus have known that searching Plaintiff White under these circumstances was objectively unreasonable and would violate his clearly established constitutional rights.

99.    As a direct and proximate result of this unlawful search, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

100.    Plaintiff White is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

101.    Plaintiff White is also entitled to punitive damages against Defendant Depew under 42 U.S.C. § 1983 because Defendant Depew's actions were malicious,

willful, or, as a minimum, committed with reckless or wanton disregard for Plaintiff White's constitutional rights.

## COUNT III
## 42 U.S.C. § 1983 CLAIM
## VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
## UNLAWFUL ARREST
## AGAINST DEFENDANT DEPEW

102.   Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

103.   The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable seizures by law enforcement officers.  This constitutional right has been interpreted by the United States Supreme Court to prohibit a warrantless arrest without probable cause.

104.   The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

105.   It was clearly established at the time Defendant Depew pulled Plaintiff White over that the Fourth and Fourteenth Amendments prohibit a warrantless arrest of a person without probable cause.

106.   Defendant Depew arrested Plaintiff White, who had not done anything wrong, without probable cause.

107.   The lack of probable cause to arrest Plaintiff White would have been evident to any reasonable law enforcement officer based on the facts and circumstances within Defendant Depew's knowledge at the time.

108.   Any reasonable police officer would thus have known that arresting Plaintiff White under these circumstances was objectively unreasonable and would violate his clearly established constitutional rights.

109.   As a direct and proximate result of this unlawful arrest, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

110.   Plaintiff White is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

111.   Plaintiff White is also entitled to punitive damages against Defendant Depew under 42 U.S.C. § 1983 because Defendant Depew's actions were malicious, willful, or, as a minimum, committed with reckless or wanton disregard for Plaintiff White's constitutional rights.

**COUNT IV**
**42 U.S.C. § 1983 CLAIM**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**EXCESSIVE FORCE**
**AGAINST DEFENDANT DEPEW**

112.   Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

113.   The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable seizures by law enforcement officers.  This constitutional right has been interpreted by the United States Supreme Court to prohibit the use of excessive force by law enforcement.

114.   The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

115.   It was clearly established at the time of Plaintiff White's arrest that the Fourth and Fourteenth Amendments prohibit law enforcement officers from using an unreasonable level of force during an arrest.

116.   By violently tackling Plaintiff White to the ground without warning in such a manner that his head and shoulder collided forcefully with the cement, Defendant Depew violated Plaintiff White's clearly established Fourth and Fourteenth Amendment rights.

117.   The level of force Defendant Depew used against Plaintiff White was objectively unreasonable because: (a) Plaintiff White had not committed any traffic violations or otherwise behaved suspiciously; (b) Plaintiff White was on a public street and objectively posed no threat to Defendant Depew, Officer Rice, himself, or anyone else at any point during the arrest; and (c) Plaintiff White did not resist arrest.

118.   Any reasonable law enforcement officer would have known that the level of force that Defendant Depew employed against Plaintiff White would violate his clearly established constitutional rights.

119.   Any reasonable police officer would thus have known that the force used under these circumstances was objectively unreasonable and would violate Plaintiff White's clearly established constitutional rights.

120.   As a direct and proximate result of Defendant Depew's excessive force, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

121.   Plaintiff White is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

122.   Plaintiff White is also entitled to punitive damages against Defendant Depew under 42 U.S.C. § 1983 because Defendant Depew's actions were malicious, willful, or, as a minimum, committed with reckless or wanton disregard for Plaintiff White's constitutional rights.

**COUNT V**
**42 U.S.C. § 1983 CLAIM**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS**
**MONELL LIABILITY FOR OFFICER MISCONDUCT**
**AGAINST DEFENDANTS TOWN OF JACKSON AND POLICE CHIEF**
**ALLEN**

123.   Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

124.  Although the United States Supreme Court has held that a municipality or police agency is not automatically liable under 42 U.S.C. 1983 for the intentional misconduct of its law enforcement officers, in *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978), the Court clarified that "'local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."

125. Here, on information and belief, there were enough incidents of unlawful conduct by Defendant Depew on innocent civilians in Jackson, Louisiana that Police Chief Allen and the Town of Jackson either knew or should have known prior to August 6, 2020.  Nonetheless, Police Chief Allen and the Town of Jackson did nothing to discipline Defendant Depew, remove him from the force (temporarily or permanently), offer him re-training, or otherwise hold him accountable.

126.  By refusing to take any of these readily available actions, Police Chief Allen and the Town of Jackson ratified Defendant Depew's conduct, such that it became *de facto* official policy or custom for law enforcement to engage in misconduct with impunity.   As such, Defendants Allen and the Town of Jackson are liable to Plaintiff White under 42 U.S.C. 1983.

127.  As a direct and proximate result of Police Chief Allen's and the Town of Jackson's failure to properly supervise Defendant Depew, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

128.  Plaintiff White is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

129.  Plaintiff White is also entitled to punitive damages against Police Chief Allen and Defendant Town of Jackson under 42 U.S.C. § 1983 because their actions were malicious, willful, or, as a minimum, committed with reckless or wanton disregard for Plaintiff White's constitutional rights.

**COUNT VI**
**STATE LAW**
**FALSE ARREST**
**AGAINST DEFENDANT DEPEW**

130.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

131.  Plaintiff White's arrest was unlawful because there was no probable cause for the arrest. Defendant Depew had no reasonable basis to believe that Plaintiff White had broken any law.

132. The facts and circumstances within Defendant Depew's knowledge during his interaction with Plaintiff White would not have caused a reasonable law

enforcement officer to conclude that Plaintiff White had committed or was in the process of committing any offense.

133.   As a direct and proximate result of this false arrest, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

## COUNT VII
## STATE LAW
## ASSAULT AND BATTERY
## AGAINST DEFENDANT DEPEW

134.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

135.  Defendant Depew used an unreasonable and unnecessary amount of force on Plaintiff White. Defendant Depew slammed Plaintiff White to the ground and caused his head and shoulder to collide violently with the cement street. Based on the totality of facts and circumstances presented, and compared with the force that any ordinary, prudent, and reasonable person would have considered necessary, this amount of force was objectively excessive and constitutes an assault and battery under Louisiana law.

136.  Defendant Depew had no reason to believe that Plaintiff White would become violent or was in any way a danger to him or Deputy Rice.

137.  Plaintiff White never tried to flee from the public street where he was arrested.

138.  Defendant Depew did not face any danger from anyone else nearby.

139.  Defendant Depew and Officer Rice outnumbered Plaintiff White.

140.  As a direct and proximate result of Defendant Depew's excessive force, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

**COUNT VIII**
**STATE LAW**
**FALSE IMPRISONMENT**
**AGAINST DEFENDANT DEPEW**

141.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

142.  Plaintiff White was detained in the East Feliciana Parish Jail for three days without probable cause for his arrest. His detention was therefore unlawful.

143.  Defendant Depew caused this unlawful detention by arresting Plaintiff White without probable cause.

144.  As a direct and proximate result of his unlawful detention, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

## COUNT IX
## STATE LAW
## MALICIOUS PERSECUTION
## AGAINST DEFENDANT DEPEW

145.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

146.  Plaintiff White was charged with the following offenses arising out of his August 6, 2020, arrest: text messaging while driving (a moving violation); resisting a police officer (a misdemeanor); possession of a controlled dangerous substance, schedule II (less than 2 grams of cocaine) (a felony); simple criminal damage to property less than $1000 (a misdemeanor); and battery of a police officer (a misdemeanor).

147. Each of these charges was directly and maliciously caused by Defendant Depew.  Defendant's malice is shown by the lack of probable cause for the charges, all of which are baseless.

148. Defendant Depew furthered the prosecution of Plaintiff White by submitting false and misleading statements. For example, the Depew Affidavit falsely stated that Defendant Depew witnessed Plaintiff White operating his motor vehicle while texting and falsely stated that Defendant Depew saw Plaintiff White holding a plastic bag.

149. As a direct and proximate result of Defendant Depew's malicious conduct, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

**COUNT X**
**STATE LAW**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST DEFENDANT DEPEW**

150. Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

151. Defendant's conduct, including the excessive force used on Plaintiff White and the decision to charge him with three misdemeanors and one felony despite the lack of probable cause, was extreme and outrageous.

152. Defendant Depew intended that his conduct would cause Plaintiff White severe emotional distress, or knew that his conduct was certain or substantially certain to cause Plaintiff White severe emotional distress.

153. As a direct and proximate result of Defendant Depew's misconduct, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

## COUNT XI
## STATE LAW
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## AGAINST DEFENDANT DEPEW

154.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

155.  Defendant Depew owed a duty to Plaintiff White to refrain from using an excessive amount of force on him.  Additionally, Defendant was duty bound to choose a course of action that was reasonable under the circumstances.

156.  Defendant breached those duties.

157.  Defendant's breach of his duty was a cause-in-fact of Plaintiff White's severe emotional distress. As a direct and proximate result of Defendant Depew's conduct, Plaintiff White has experienced physical harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

## COUNT XII
## STATE LAW
## NEGLIGENT HIRING
## AGAINST DEFENDANTS JACKSON POLICE DEPARTMENT AND
## TOWN OF JACKSON

158.  Plaintiff White hereby adopts all of the preceding paragraphs as if set forth fully herein.

159.  Under Louisiana law, "a duty is imposed on a municipal employer in arming deputies to exercise reasonable care in hiring, training and retaining such deputies." *Roberts v. Benoit*, 605 So.2d 1032 (1992).

160.  Here, the Town of Jackson and Jackson Police Department breached their duty to exercise reasonable care in hiring Defendant Depew.  A reasonable background check would have informed the hiring authority of the Town of Jackson and the Jackson Police Department that there were allegations of unlawful behavior that had been made against Defendant Depew, and that he had been arrested for stalking and malfeasance in office.  Thus, the Town of Jackson and Jackson Police Department either knew or should have known of these past incidents, as the information was in the public domain and readily accessible upon a reasonable search.  Any responsible law enforcement agency that knew or should have known of these allegations would not have hired Defendant Depew.

161.  The Town of Jackson and the Jackson Police Department breached their duty to exercise reasonable care in hiring Defendant Depew.  This was the proximate cause of the injuries that Plaintiff White suffered at the hands of Defendant Depew on August 6, 2020.

162.  As a direct and proximate result of the Town of Jackson and the Jackson Police Department's tortious conduct, Plaintiff White has experienced physical

harm, economic harm, and emotional harm, including depression, anxiety, and sleeplessness.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against each of the Defendants, and award the following relief:

A.    Declaration that Defendants' conduct violated the Fourth and Fourteenth Amendments of the United States Constitution;

B.    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

C.    Compensation for economic losses on all claims allowed by law in an amount to be proven at trial;

D.    Punitive damages on all claims allowed by law in an amount to be determined at trial;

E.    Attorneys' fees and costs associated with this action, including expert witness fees, on all claims allowed by law;

F.    Pre- and post-judgment interest at the lawful rate; and

G.    Any other relief the Court deems just and proper.

Respectfully submitted,

Dated: August 5, 2021              /s/ Megan Snider
                                   Megan Snider

LA Bar No. 33382
Nora Ahmed*
ACLU Foundation of Louisiana
1340 Poydras St., Suite 2160
New Orleans, LA 70112
(504) 522-0628
msnider@laaclu.org
nahmed@laaclu.org

and

Joshua C. Toll*
King & Spalding LLP
1700 Pennsylvania Avenue, NW Suite 200
Washington, DC 20006
(202) 737-8616
jtoll@kslaw.com

Gilbert Oladeinbo*
King & Spalding LLP
1180 Peachtree St. NE
Atlanta, GA 30309
(404) 572-2831
goladeinbo@kslaw.com

*Pro Hac Vice Application Forthcoming

Attorneys for Plaintiff Craig White